147 EAST 86TH STREET, INC., Landlord, Appellant, *v.* SANFORD YAEGER, Tenant, Respondent.

Supreme Court, Appellate Term, First Department, October 30, 1947.

*Pomerance & Snitow* for appellant.

*Robert Goldstein* for respondent.

EDER, J. On June 1, 1944, the " freeze date " provided for in the Business Rent Law (L. 1945, ch. 314, § 2, subd. [c]), the premises in concern were vacant and were not used or occupied **as business space.**

In December, 1945, the parties entered into an agreement in writing, and conforming to said subdivision (c) of section 2, it recited that said space was not rented on June 1, 1944; that the parties had entered into an agreement for a term of one year at a rent reserved at the sum of $900 per annum, and the parties agreed that the reasonable rent for said space on June 1, 1944, was said sum of $900 per annum, such rent being charged on such date for comparable space in the same building, and further, that the emergency rent for said space was the said sum of $900 as the reasonable rent plus 15% thereof.

In compliance with section 3 of said Law, the landlord duly notified the tenant that the emergency rent was in the amount of $75 per month plus 15%, or $86.25 per month.

The lease in question was for a term commencing January 1, 1946, and ending December 31, 1946. On November 27, 1946, the landlord notified the tenant that if he remained in possession of the premises after the expiration of his lease, his rent thereafter would be the emergency rent of $86.25 per month. The tenant remained in possession after the expiration of the lease but refused to pay said sum of $86.25 per month and tendered instead rent for the months of January and February, 1947, at $75 per month which the landlord refused. This proceeding to dispossess followed.

One of the defenses interposed by the tenant, and the only one pertinent here, was that the agreement of lease was void and of no force and effect in that it was not entered into in compliance with the statutes of this State. In this connection the tenant, at the close of the landlord's case, moved to dismiss the petition in that the agreement fixing the emergency rent of the leased premises was void because it failed to comply with the provisions of section 4 of chapter 314, in that the agreement failed to contain the statement required by section 4 setting forth the amount of the emergency rent, stating that the landlord has advised the tenant of his right to continue paying the emergency rent until changed by arbitration or court action, and providing for a sixty-day cancellation privilege by the tenant.

The court below granted the motion holding that the provisions of section 4 were applicable to an agreement fixing emergency rent of premises vacant on the freeze date, pursuant to subdivision (c) of section 2 and that the agreement of the parties fixing the emergency rent was void and dismissed the petition on the merits.

This ruling, in my opinion, was erroneous.

Section 2 and section 4 relate to and govern separate and distinct matters; they are not interrelated at all. The provisions of section 4 are not applicable to and do not govern an agreement made under section 2.

Subdivision (c) of section 2 deals with and defines emergency rent and prescribes a method and procedure for fixing the emergency rent of premises vacant on June 1, 1944, the freeze date. It distinctly provides that as to such space the emergency rent is to be the reasonable rent therefor as business space on June 1, 1944, plus 15% to be determined on the basis of comparability or other satisfactory evidence. Section 2 thus fixes an emergency or ceiling rental of space vacant on the freeze date where no emergency rent previously existed.

Section 4 relates solely to and is concerned with the fixing of rent *in excess* of the emergency rent and, necessarily, presupposes the existence of an emergency or ceiling rent and sets forth the elements to be considered by arbitrator or court in fixing the rent in excess of the emergency rent, and it is apparent from a reading of section 4 that it has reference and relates to tenants already in possession for the purpose of fixing a rent in excess of the emergency rent and has no application to agreements fixing an emergency rent for space *vacant* on the freeze date, June 1, 1944. Section 4 deals with agreements as to tenants using or occupying the same space on March 28, 1945, the effective date of the act.

Tenant's counsel cites *Roof Health Club* v. *Jamlee Hotel Corp.* (64 N. Y. S. 2d 473, affd. 271 App. Div. 481, affd. 296 N. Y. 883) and *Moncel Realty Corp.* v. *Whitestone Farms* (188 Misc. 431, affd. 272 App. Div. 899) as holding that section 4 applies to an agreement attempting to fix the reasonable rent of premises *unoccupied* on the freeze date. Those cases make no such ruling.

The view and ruling of the court below are erroneous and, accordingly, the final orders appealed from should be reversed, with $30 costs, and final orders directed for landlord, as prayed for in the petitions, with costs.

McLAUGHLIN and HECHT, JR., JJ., concur.

Orders reversed, etc.