Kanela E. Grivas, an Infant, by Emanuel Grivas, Her Father and Natural Guardian, et al., Appellants, v Georgia Grivas, Respondent.

Second Department, December 16, 1985

**APPEARANCES OF COUNSEL**

*Rizzo & Rizzo, P. C. (Lewis J. Rizzo* of counsel), for appellants.

*Rider, Drake, Sommers & Loeb, P. C. (Thomas N. O'Hara, P. C.,* of counsel), for respondent.

**OPINION OF THE COURT**

RUBIN, J.

On May 9, 1981, the infant plaintiff (who was approximately 2½ years old) and her younger brother were playing with a ball in the backyard of their parents' house. The defendant, the children's mother, was mowing the lawn in the yard with an electric powered lawn mower. Upon hearing the telephone ring, the defendant left the lawn mower still running when she went inside the house; the defendant did not instruct her children to stay away from the lawn mower. While the defendant was talking on the telephone, the infant plaintiff went to retrieve her ball, which had rolled in close proximity to the lawn mower. The infant plaintiff was severely injured when her left hand came into contact with the rotating blades of the unattended lawn mower.

Thereafter, the infant plaintiff, by her father, commenced this negligence action against her mother to recover damages for personal injuries sustained in the accident. The complaint also asserted a derivative action on behalf of the father against the defendant to recover damages for medical expenses. In paragraph NINTH of the complaint, the plaintiffs alleged that the defendant was negligent in the supervision, management and control of the infant plaintiff. In paragraph TENTH, plaintiffs additionally alleged that defendant was negligent in the operation, management and control of the lawn mower.

After issue was joined, the plaintiffs moved for summary judgment against the defendant. The defendant cross-moved for summary judgment, seeking the dismissal of the complaint on the ground a child does not have a cause of action against her parent for negligent supervision. Special Term denied the plaintiffs' motion and granted the defendant's cross motion.

Although Special Term correctly concluded that paragraph NINTH of the complaint, alleging negligent supervision of the infant plaintiff by defendant mother, is not actionable *(see, Holodook v Spencer,* 36 NY2d 35), it erred with respect to

paragraph TENTH. The latter paragraph, alleging the defendant's negligent operation of a lawn mower, is a separate and cognizable claim.

In 1969, the Court of Appeals abolished the defense of intrafamily tort immunity for nonwillful torts *(Gelbman v Gelbman,* 23 NY2d 434, 439). However, in 1974, the Court of Appeals carved out an exception to the *Gelbman* rule when it concluded that actions between a child and his or her parent based solely upon negligent supervision are not maintainable *(see, Holodook v Spencer, supra).* The *Holodook* parental immunity exception is confined to injuries resulting solely from negligent supervision and is not extended to situations in which the parent breached a duty owed apart from the familial relationships *(Holodook v Spencer, supra,* at pp 50-51). "Thus, a child * * * has a viable cause of action against its parent based on the parent's negligent act which breaches a duty owed to the world at large" *(Hurst v Titus,* 77 AD2d 157, 158; *see also, Acquaviva v Piazzolla,* 100 AD2d 502; *Lynch v Lynch,* 88 AD2d 972; *Goedkoop v Ward Pavement Corp.,* 51 AD2d 542; *Malin v Malin,* 124 Misc 2d 1078). A brief recitation of various factual situations will serve to demonstrate the distinction between the latter rule and the applicability of the *Holodook* parental immunity exception to the abrogation of intrafamily immunity for nonwillful torts established in *Gelbman v Gelbman (supra).*

In *Goedkoop v Ward Pavement Corp. (supra),* an action was brought against demolition workers to recover damages for personal injuries sustained by the infant plaintiff as a result of the explosion of a blasting cap. The infant plaintiff had found some blasting caps at the defendants' demolition site and brought the caps home. The plaintiff's father took the caps and placed them in a jar in his basement. About two years thereafter, the infant removed one of the blasting caps and tried to put the point of a compass into the explosive. His action resulted in an explosion. The defendants moved to amend their answer to include a counterclaim against the infant's father for indemnification. Special Term denied the motion on the ground that *Holodook (supra)* barred an action grounded on a parent's failure to supervise a child. This court reversed the order and granted the defendants' motion to amend their answer because the purported counterclaim did not simply allege that the father was unaware of his son's activities. Rather, the import of the counterclaim was that the father, with knowledge of the nature of the material, negli-

gently maintained blasting caps in his basement. Consequently, this court's holding in *Goedkoop* was premised upon the rationale that "[t]he duty not to negligently maintain explosives is a duty owed to all and is not simply a duty emanating from the parent-child relationship" *(Goedkoop v Ward Pavement Corp.,* 51 AD2d 542, 543, *supra).* Similarly, in *Lynch v Lynch* (88 AD2d 972, *supra),* this court concluded that leaving a trap door open may lead to parental liability as the duty to exercise reasonable care in the use of such a door is owed to all.

In *Hurst v Titus* (77 AD2d 157, *supra),* the infant was injured in a fire negligently caused by her mother. Applying the *Holodook* parental immunity exception, the Appellate Division, Fourth Department, reasoned that the mother could not be liable to her daughter for injuries caused solely by her failure to rescue the child before calling the fire department, since the omission constituted negligent supervision. However, she could be liable for injuries proximately caused by her negligence in causing the fire in the first instance. The court concluded that whether or not the latter act of negligence was the proximate cause of the injuries was for a jury to decide as a question of fact.

In *Acquaviva v Piazzolla* (100 AD2d 502, *supra)* the guardian of Anthony, the one-year-old infant plaintiff, sought damages against his parents because of their negligence in allowing the family station wagon to roll down the driveway and over Anthony after Anthony's three-year-old brother, John, had apparently disengaged the emergency brake while playing in the vehicle. Upon returning home with the children in the station wagon from a holiday outing, the infant's mother parked the car in the inclined driveway and engaged the emergency parking brake. However, she neither locked the vehicle's doors nor closed its windows, albeit she was aware that her children had previously played alone in the car, that another family automobile had previously rolled down the driveway, and that the emergency brake was easily operated by pulling a small knob on the dashboard. Cognizant that parents owe a duty to third parties to shield them from their child's improvident use of a dangerous instrument when the parents are aware of and capable of controlling its use *(see, Nolechek v Gesuale,* 46 NY2d 332, 338), this court affirmed the trial court's finding that defendants were liable because they permitted John's use of a dangerous instrument. The defendants attempted to avoid liability by claiming that they owed

no duty to Anthony because the accident was merely the result of inadequate parental supervision, i.e., failing to keep Anthony in the patio area and permitting John access to the family car. This court rejected this argument noting that "Anthony, who toddled into the driveway, occupied the same position as any neighborhood child with respect to defendants' allowing John in the car" *(Acquaviva v Piazzolla, supra,* at p 504)*. Consequently, defendants owed to Anthony the same duty of shielding him from John's improvident use of a dangerous instrument as to any other third party and the familial relationship between the parties was purely incidental.

In *Malin v Malin* (124 Misc 2d 1078, *supra),* the defendant parent parked her vehicle on an incline without applying the parking brake. She then left her 2½-year-old son in the front seat while the keys were in the ignition switch so that the infant had access to the means of putting the car in motion. Nor did the mother lock the car doors. While the car was unattended, the child got out of the vehicle. The car then began to roll down the driveway and the left front wheel ran over the infant. Since the duty to exercise due care in parking a motor vehicle was owed to the world and derived from the parties' relation as driver and pedestrian, Special Term, Erie County, held that the issue of whether the infant's injuries were proximately caused by the mother's breach of the duty to park carefully or the mother's negligent supervision of her child precluded summary judgment.

The factor that distinguishes each of the aforenoted cases from an action predicated solely upon negligent parental supervision is the scope of the duty—a duty ordinarily owed apart from the family relationship—and not the fact the dangerous condition was created by an affirmative act of the parent. For example, in *Zikely v Zikely* (98 AD2d 815, *affd* 62 NY2d 907), the defendant parent turned on a hot water faucet in a tub to prepare a bath and then left the room. The child, left unsupervised, wandered into the bathroom and fell into the tub, suffering severe burns. Since the duty emanated from the parent-child relationship, the majority of this court concluded that the *Holodook* principle of nonliability for negligent supervision by a parent of a child could not be avoided by arguing that a dangerous condition was created by the parent. The turning on of the hot water in the tub was not a breach of a duty owed to the public generally.

Within the context of this case, the mother, Georgia Grivas,

would not be liable to her daughter for injuries caused by her failure to instruct the child to stay away from the lawn mower, nor for permitting the child to play in a yard where an unattended, running lawn mower was located. Both the omission to give instructions and the affirmative act of permitting the child to play in proximity to a potentially dangerous condition would merely constitute negligent parental supervision (see, Ryan v Fahey, 36 NY2d 35 [the parental act of bringing one's child to a neighbor and letting the child loose in a yard where an eight year old was playing with a power mower merely constituted negligent supervision]). However, the duty to exercise reasonable care in the operation of a lawn mower is a duty owed to all. Viewed in the light most favorable to plaintiff (Parvi v City of Kingston, 41 NY2d 553, 554; Hurst v Titus, supra, at p 160; Marine Midland Bank-Eastern Natl. Assn. v Prel-Albany, 50 AD2d 996), the facts alleged in the complaint, if proven, would establish that the defendant mother, as the operator of the lawn mower, breached the operator's duty of care by the negligent act of leaving the lawn mower unattended, with the motor running and the rotary blades turning, in an area accessible to children. The 2½-year-old plaintiff, who went to retrieve her ball which had rolled in close proximity to the lawn mower, occupied the same position as any neighborhood child with respect to the operator's duty of care. There would have been no basis to dismiss the subject complaint against the operator of the lawn mower had the injured plaintiff been the child of a neighbor retrieving a ball that had rolled into the yard and in close proximity to the unattended, running lawn mower. With respect to the operator's duty of care, the family relationship between the infant plaintiff and defendant was purely incidental. Consequently, paragraph TENTH of the complaint states a viable cause of action and should not have been dismissed.

Here, a question of fact exists as to whether negligent supervision or the breach of a duty to exercise reasonable care in the operation of a lawn mower, a duty owed apart from the family relationship, was the proximate cause of the infant plaintiff's injuries. The determination as to the proximate cause or causes of the infant's injuries must await the trial of the action.

Accordingly, Special Term's order should be modified by granting defendant's cross motion for summary judgment only to the extent of awarding partial summary judgment dismiss-

ing paragraph NINTH of the complaint and denying it in all other respects. As so modified, the order should be affirmed.

MOLLEN, P. J., O'CONNOR and LAWRENCE, JJ., concur.

Order of the Supreme Court, Orange County, dated January 25, 1984, modified by granting the defendant's cross motion for summary judgment only to the extent of awarding partial summary judgment dismissing paragraph NINTH of the complaint and denying it in all other respects. As so modified, order affirmed, without costs or disbursements.